UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DIANE SHNAIDER, Personal Representative )<br>of the Estate of AMANDA COWARD, )<br>)<br>    Plaintiff, )<br>)<br>        v. )<br>)<br>JONATHAN E. WALTS, )<br>)<br>    Defendant. ) | Case No. 3:19-cv-11925-MGM |

MEMORANDUM AND ORDER REGARDING PROGRESSIVE CASUALTY
INSURANCE COMPANY'S MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF
OBTAINING AN ORDER FOR LEAVE TO WITHDRAW ITS LEGAL DEFENSE OF
JONATHAN E. WALTS
(Dkt. No. 19)

ROBERTSON, U.S.M.J.

I. INTRODUCTION

Before the court is Progressive's motion to intervene in the instance action "for purpose of obtaining an Order for Leave to Withdraw Its Legal Defense of Jonathan E. Walts" (Dkt. No. 19 at 1). For the reasons set forth below, Progressive's motion will be GRANTED in part and DENIED without prejudice in part.

II. BACKGROUND

On August 20, 2018, Jonathan Walts ("Walts") was driving on Interstate 391 in Chicopee. Amanda Coward was a passenger in the front seat of the car Walts was driving. Walts' car veered into the center lane of Interstate 391 and the passenger side of the vehicle collided with a pickup truck. According to eyewitnesses, Walts was traveling at between 80 (eighty) and one hundred (100) miles per hour when the accident occurred, which was far above the posted speed limit. Ms. Coward suffered severe head trauma from the crash. The first

1

responders attempted to revive her at the scene of the accident. She was transported to an area hospital, where she was pronounced dead (Dkt. No. 1, Compl. ¶¶ 6-12).

The case is in this court on the basis of diversity jurisdiction (Compl. ¶ 4). *See* 28 U.S.C. § 1332(a): Walts is a Massachusetts resident, while Ms. Coward's mother, the representative of Ms. Coward's estate, is a Maine resident. The plaintiff alleges an amount in controversy that reasonably exceeds $75,000.00 (Compl. ¶¶ 1-4).

At the time of the accident, Walts was insured by Progressive Casualty Insurance Company ("Progressive"). The automobile liability insurance policy had a bodily injury policy limit of $25,000.00 per accident (Dkt. No. 19 at 1). Walts' policy provided in pertinent part as follows:

> We [i.e., Progressive] have the right to defend any lawsuit brought against anyone covered under this policy for damages which might be payable under this policy. We also have a duty to defend any such lawsuit, even if it is without merit, but our duty to defend ends when we tender, or pay to any claimant or to a court of competent jurisdiction, with the court's permission, the maximum limits of coverage under this policy. We may end our duty to defend at any time during the course of the lawsuit, by tendering, or paying the maximum limits of coverage under the policy, without the need for a judgment or settlement of the lawsuit or a release by the claimant.

(Dkt. No. 22-2 at 3). Progressive is providing a defense to Walts (Dkt. No. 22 at 1). After the accident, Progressive offered the plaintiff "payment of the Defendant's $25,000.00 bodily injury policy limit in exchange for a release of Jonathan Walts" (Dkt. No. 20 at 1). The plaintiff refused the offer and refused to release claims against Walts (Dkt. No. 20 at 1). The parties have not completed discovery primarily because the most important remaining discovery event is the deposition of Walts, who is incarcerated. By mutual assent, counsel for both parties have postponed that event because of the difficulty of arranging a deposition in a civil case when an

individual is incarcerated and because of the restrictions on visits to jails and houses of correction and the risk of contracting COVID-19 if a deposition were to be conducted in person.

    III.    ANALYSIS

    A. Progressive's right to intervene.

Progressive seeks leave to intervene in the instant action pursuant to Fed. R. Civ. P. 24. Progressive has not specified whether it seeks to intervene pursuant to Fed. R. Civ. P. 24(a)(2) (intervention as of right) or 24(b)(1)(B) (permissive intervention). *See Ungar v. Arafat*, 634 F.3d 46, 50 (1st Cir. 2011). Progressive further seeks to rely on Fed. R. Civ. P. 67, which sets forth the terms on which a party, with notice to all other parties and with leave of court, "may deposit with the court all or part of the money" which forms part of the relief sought. The plaintiff disputes that Progressive is entitled to the relief it seeks but has not directly argued that Progressive should be barred from intervening in the instant case.

    To intervene as of right,

> a would-be intervenor must demonstrate that: (i) its motion is timely; (ii) it has an interest relating to the property or transaction that forms the foundation of the ongoing action; (iii) the disposition of the action threatens to impair or impede its ability to protect this interest; and (iv) no existing party adequately represents its interest.

*Ungar*, 634 F.3d at 50 (citing *R & G. Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009); *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir. 1989)). Because these factors are imprecise, "the rule should be applied with an eye toward the 'commonsense view of the overall litigation.'" *Id.* at 51 (quoting *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998)).

The plaintiff does not argue that Defendant's motion is untimely. The court finds the motion timely. The court held the Fed. R. Civ. P. 16 initial scheduling conference on February

3

7, 2020 (Dkt. No. 15).  Progressive's motion to intervene was filed shortly thereafter, on March 31, 2020 (Dkt. No. 19).  As to the second factor, the First Circuit has said that "[t]here can be no dispute that an insurer has a direct interest in a lawsuit brought by an injured party against its insured when the insurer admits that the claim is covered by the policy in question."  *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989).  Here, the estate of Amanda Coward, the woman killed in an accident while Walts was driving, has brought suit against Walts.  Progressive, which has offered to tender the limits of its policy covering Walts in exchange for a release in his favor and is providing him a defense, admits that the plaintiff's claim is covered by Walts' policy (Dkt. No. 19).

It appears that Progressive seeks to intervene in this case to deposit the proceeds of Walts' policy with the court and to withdraw its defense of Walt.  Progressive claims to be entitled to this relief by the terms of the Progressive policy insuring Walts.  If, in fact, Progressive is entitled to end its defense of Walts and cease incurring the costs of providing that defense, then it has an interest that can most efficiently be protected by intervention in this action.  Neither of the existing parties – the plaintiff or Walts – has a reason to protect the interest Progressive has asserted.  The factors set forth by the First Circuit are satisfied and, accordingly, the court finds that Progressive has met the prerequisites for intervention pursuant to Rule 24(a)(2).

      B.  Whether Progressive is entitled to the relief it seeks.

Progressive represents to the court that "[f]ollowing the subject accident, Progressive offered to plaintiff payment of the Defendant's $25,000.00 bodily injury policy limit in exchange for a release of Jonathan Walts" (Dkt. No. 20 at 1).  Progressive argues that this tender entitles it, by the terms of Walts' policy, the pertinent portion of which is set forth above, to terminate its

defense of Walts. Progressive points out that "a number of [Massachusetts] Superior Court Judges have authorized insurers to terminate their duty to defend [an] insured by tendering or paying [a] policy limit in the absence of a Judgment, settlement, or Release signed by the Plaintiff(s)" (Dkt. No. 20 at 2). Progressive has attached decisions issued by four judges of the Superior Court Department of the Massachusetts Trial Court (Dkt. No. 20-1 at 7-20). In each of these cases, a judge held that an insurer was entitled to end its defense of an insured without settlement, judgment, or release if the insurer tendered, paid, or deposited with the court the full limit of its liability under its policy with the insured defendant. In opposing Progressive's motion, Walts relies on *Cont'l Ins. Co. v. Burr*, 706 A.2d 499 (De. 1998), in which the court held, based on the language in the policy at issue in *Burr*, "that the duty to defend is not discharged until policy limits are paid to settle all claims or to satisfy a judgment against the insured." *Id.* at 501 (footnote omitted). Walts further contends that it would be bad public policy to permit Progressive to withdraw its defense of him in this case, which involves a very serious motor vehicle accident (Dkt. No. 22 at 2).

"[A] federal court, in applying state law, must look to the pronouncements of the Supreme Judicial Court, as the highest court in Massachusetts." *Vertex Surgical, Inc. v. Paradigm Biodevices, Inc.*, 648 F. Supp. 226, 231 n.2 (D. Mass. 2009) (citing *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008)). If, as in this case, "the SJC has not spoken to the precise issue, 'the federal court must make an informed prophecy as to the state court's likely stance' …. Although lower state court decisions may provide guidance to the federal court, and are entitled to some weight, the decisions of those courts are not binding." *Id.* (quoting and citing *Andre Robinson Int'l*, 547 F.3d at 51). Accordingly, the Superior Court decisions on which Progressive relies may provide guidance in interpreting the relevant

provisions of Defendant's insurance agreement with Progressive, but the decisions are not binding.

A 2001 decision issued by Superior Court Judge Margaret R. Hinkle recites the history of the provision in the Progressive policy that is at issue here. In 1992, the Massachusetts Appeals Court was called on to interpret a provision in a standard form automobile liability insurance policy which had been approved by the Massachusetts Commissioner of Insurance and which was entitled "Our Duty to Defend You and Our Right to Settle." *See generally Aetna Cas. & Sur. Co. v. Sullivan*, 597 N.E.2d 62 (Mass. App. Ct. 1992). The policy before the *Sullivan* court provided, in pertinent part, as follows:

> "We have the right and duty to defend any lawsuit brought against anyone covered under this policy for damages which might be payable under this policy. We will defend the lawsuit even if it is without merit. We have the right to settle any claim or lawsuit as we see fit. Our duty to settle or defend ends when we have paid the maximum limits of coverage under this policy."

*Id.* at 63. The *Sullivan* court held that the provision meant that "the insurer would be discharged from any further duty to defend if it should make a payment equal to the maximum policy limits either to settle a claim against the insured or in total or partial satisfaction of a judgment against the insured upon conclusion of the litigation." *Id.* at 64. The *Sullivan* court reasoned that an insured would understand that the insurer:

> was undertaking a duty either to defend or settle any lawsuit against him related to use of the insured vehicle, and he would understand the reference to payments in the next sentence only to include payments made by the insurer in the course of carrying out its obligations, set forth in the preceding three sentences, either to settle or defend.

*Id.* at 64.

Judge Hinkle noted that, after, and in response to, the *Sullivan* decision, there was an amendment to the standard language in Massachusetts automobile liability insurance policies

6

concerning an insurer's duty to defend (Dkt. No. 20-1 at 8-9).  The *Sullivan* court held that the question a court must resolve is what would a reasonable insured understand "as to the scope of the insurer's duty," *Sullivan*, 597 N.E.2d at 64, and that is the question now before this court.  The language in the policy issued to Walts is far clearer – and is, indeed, unambiguous – with respect Progressive's right to end its duty to defend during the pendency of a case.  Defendant's policy provides that Progressive is entitled to end its duty to defend "at any time during the course of the lawsuit" "without the need for a judgment or settlement of the lawsuit or a release by the claimant" by paying the policy limits to the claimant, tendering the policy limits to the claimant, or paying the full policy proceeds into court, with the court's approval, for distribution to the claimant or claimants.  In the case at bar, a reasonable insured in Walts' position would understand that Progressive had the right to make the maximum policy benefit available to the claimant unconditionally and thereby put an end to its duty to defend.  Furthermore, this result appears to have been sanctioned by the SJC.  In 2004, Superior Court Judge McCann ruled on a motion by Commerce Insurance Company to intervene for the limited purpose of depositing funds and withdrawing its defense of its insureds (Dkt. No. 20-1 at 12).  Judge McCann was charged with interpreting the same duty to defend clause that appears in Walts' Progressive policy.  Judge McCann granted the insurer's motion (Dkt. No. 20-1 at 14), observing that "[t]he withdrawal and termination of an insurer's defense of its insureds after the insure[r] tend[er]ed its policy limits and offered to deposit those limits into court was authorized" by the SJC in *Premier Ins. Co. v. Furtado*, 703 N.E.2d 208, 211 (Mass. 1998) ("Premier Insurance Company… has no continuing duty to defend its insureds … once it pays the policy limits to the plaintiffs in the underlying case").

Defendant relies on *Burr* to support its position that a reasonable insured would understand that an insurer's initial promise to defend the insured appearing before the statement of the insurer's right to end the defense on payment of the policy limits would give rise to a reasonable expectation that the insurer was required to maintain a defense through settlement or judgment (Dkt. No. 22 at 2).  In *Burr*, the policy at issue included promises to, first, pay up to the limits of coverage on claims for bodily injury or property damages, and, second, to defend an insured "at the insurer's expense, any claim covered by the policy." *Burr*, 706 A.2d at 501. "The duty to defend provision end[ed] with the caveat that [the insurer] [wa]s not obligated to '(a) pay any claim or judgment; or (b) defend any claim or lawsuit; when [its] payments have reached [the] Limit of Coverage.'" *Id.* (third and fourth alterations in the original).  Concluding that the term "payments" was ambiguous in context, the court in *Burr*, like the court in *Sullivan*, concluded that a reasonable person, reading the language in the policy would "expect to be defended until claims arising under the policy [were] resolved, either by settlement or judgment." *Id.* at 502.  In contrast to Progressive's policy, the policy in *Burr* did not explain to the insured that the insurer could withdraw its defense at any time during the lawsuit by tendering or paying the maximum limits of coverage available under the policy without the need for a settlement or judgment in the lawsuit or a release from the claimant or claimants. *Burr* is readily distinguishable from the case at bar and from the cases on which Progressive relies that were decided by Massachusetts Superior Court judges.

As to Defendant's public policy argument, while it has appeal, the SJC has stated that "[w]here the language of an insurance policy is clear and unambiguous, [the court] rel[ies] on that plain meaning and do[es] not consider policy arguments in interpreting the plain language."

8

*Mount Vernon Fire Ins. Co. v. Visionaid, Inc.*, 76 N.E.3d 204, 209 (Mass. 2017).  This is such a case.

In summary, this court agrees with the decisions of Superior Court Judges Hinkle, McCann, Macdonald, and Fecteau holding that, under the terms of a standard automobile liability insurance policy that includes the provision set forth above, an insurer in Progressive's position is entitled to tender or pay the limits of its policy to a claimant or move for leave to pay the policy proceeds into a court of competent jurisdiction during the pendency of a lawsuit without a settlement, release, or judgment, and, having done so, end its defense of its insured.

Progressive is not entitled, however, to end its defense of Defendant or to an order that Progressive owes no further duty to defend him at this time (Dkt. No. 19 at 2).  Progressive's offer to Plaintiff to pay the policy limits in exchange for a release of Defendant did not qualify as a tender or an offer to pay the policy limits to the plaintiff.  Progressive instead offered the plaintiff "something substantially less, namely, payment of the policy limits in exchange for the plaintiff's release of claims that appeared to have merit both in terms of liability and damages."  *Davis v. Allstate Ins. Co.*, 747 N.E.2d 141, 147 (Mass. 2001).  Accordingly, so much of Progressive motion as seeks leave to intervene in this action will be granted pursuant to Fed. R. Civ. P. 24(a)(s).  So much of the motion as seeks a declaration that Progress is entitled to end its defense of Defendant is denied without prejudice.  Progressive may take such further steps as it deems appropriate.

IV.   CONCLUSION

For the foregoing reasons, Progressive's Motion to intervene is GRANTED.  So much of the motion as seeks further relief is DENIED without prejudice.

It is so ordered.

Dated:  April 9, 2021                                              /s/ Katherine A. Robertson
                                                                              KATHERINE A. ROBERTSON
                                                                              U.S. MAGISTRATE JUDGE